**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Roberto NAVARRO–FLORES, Defendant-Appellant.**

**No. 78–3735.**

United States Court of Appeals, Ninth Circuit.

April 11, 1980.

J. Frank McCabe, Goorjian & McCabe, San Francisco, Cal., for defendant-appellant.

Joseph M. Burton, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before ELY and KILKENNY, Circuit Judges, and MURRAY,* District Judge.

PER CURIAM:

Appellant Navarro-Flores (Navarro) appeals from the judgment of conviction of distribution of heroin in violation of 21 U.S.C. § 841(a)(1). He pleaded guilty to one count of a four-count indictment on September 25, 1978 as part of a plea agreement, Fed.R.Crim.P. 11(e), pursuant to which the Government agreed to dismiss the other counts and the United States Attorney agreed to recommend a term of imprisonment of not more than eight years. Navarro moved to withdraw the plea of guilty before sentence, and the motion was denied. He was sentenced on December 22, 1978 to seven years' imprisonment with a special parole term of three years.

---

* The Honorable Frank J. Murray, Senior United States District Judge for the District of Massachusetts, sitting by designation.

1. No record was made of the Spanish language translation of the interpreter.

2. The district judge responded to Cimmet as follows:

    You can tell Mr. Navarro that I've received the letter that he sent . . . .

I

*Facts*

Navarro is a Spanish-speaking Mexican citizen about 50 years of age, with formal education limited to the fourth grade in Mexico, who had resided in the United States for about twelve years, and who spoke and understood little, if any, English. Navarro entered into the plea agreement after consulting with Jerry Cimmet, his attorney, through interpreters. On September 25 the interpreter was Mrs. Mendoza. The plea of guilty was tendered to the district court, and accepted, on September 25 after examination of Navarro through the interpreter by the district judge. The case was scheduled for sentencing on November 9, 1978. Between September 25 and November 9, the district judge received and examined the presentence report.

On November 9 Attorney Cimmet stated in substance to the district judge that he had received a letter from Navarro complaining of the translation [1] by the interpreter of the September 25 proceedings, protesting his innocence of the charges, and requesting he be allowed to withdraw his plea of guilty, to have new counsel and a trial by jury.[2] The district judge took no action on the motion to withdraw the plea, but permitted Cimmet to withdraw as counsel, and scheduled the case to another day for further hearing.

Navarro was represented by Attorney Frank McCabe when the case came on to be heard on December 22, 1978. At the outset of the proceedings, Attorney McCabe moved for transfer of the case to another judge for hearing of the motion to withdraw the plea. McCabe argued that the ground of the motion for transfer was prej-

---

\*   \*   \*   \*   \*   \*

I am not going to allow him to withdraw his plea and I am not going to allow his attorney to withdraw representation because I think that the defendant here is a well educated, sophisticated, knowledgable, intelligent dope dealer and we're going to have the sentencing this morning.   .   .   .

udice on the part of the district judge as shown by his remarks on November 9. After hearing McCabe's argument, the district judge denied the motion to transfer.[3] The motion to withdraw the plea then was heard.

Attorney McCabe argued that in addition to the question of the interpretation, there were the further issues: (1) whether Navarro had maintained his innocence, (2) whether he understood what was transpiring during the district judge's examination during the plea hearing, and (3) whether Navarro realized he had the right to go to trial after his attorney recommended he plead guilty. The motion was heard on the testimony of Navarro, Mrs. Mendoza, and Attorney Cimmet.

Navarro testified he told Mrs. Mendoza (interpreting for Attorney Cimmet) he was innocent, and he asserted his innocence in his testimony. He testified also that Mrs. Mendoza said he should plead guilty, said he had no reason to go to trial because he would lose, said if he went to trial and was found guilty he would get 15 to 30 years' imprisonment, and said on a plea of guilty he would get nine years or less. On cross-examination he admitted knowing of his co-defendant's sentence before writing the letter to Cimmet. In his affidavit filed in support of the motion to withdraw, Navarro averred that Mrs. Mendoza told him he would have to tell a lie to the judge that looks like the truth. Mrs. Mendoza, maintaining that she had translated verbatim in the conference between Navarro and Attorney Cimmet and in court, testified that she had neither told Navarro that he had to lie to the judge nor that he would be better off if he pleaded guilty and had informed Navarro that the maximum penalty for the charge was 15 years. She also testified that Navarro did not ask her any questions during the judge's examination, and did not say to her that he did not understand her during the plea hearing. Attorney Cimmet testified that he did not speak Spanish and communicated with Navarro only through interpreters, including Mrs. Mendoza, and that he was satisfied with her services as a translator. He testified to the advice he gave Navarro through the interpreter.[4] At the conclusion of the testimony the district judge heard McCabe's argument and, after commenting on Navarro's motives and degree of sophistication, concluded that

> the whole basis . . . goes on the credibility of the witnesses . . . the credibility of Mrs. Mendoza . . . and if I have to choose between this defendant and Mrs. Mendoza, I don't have much other reason than to follow Mrs. Mendoza, and I believe what she says is correct and I believe what Mr. Cimmet says is correct. And I just don't put much credibility in the testimony of Mr. Navarro.

The motion to withdraw the plea was denied, and the case was scheduled for imposition of sentence later in the day.

3. At the conclusion of Attorney McCabe's argument, the district judge commented:

> Well, I made up my mind on Mr. Navarro so far as the sentence that I was going to impose at the time because I had read the probation report . . . . . I had read the probation report, knew all the content of the probation report, his background, what he was doing and on that basis, on the items that you quoted I said, he was a sophisticated drug pusher, which according to the probation report, he is a sophisticated drug pusher, but that isn't the issue before me. It's a very simple issue, and it hasn't anything to do with anything other than whether or not Mrs. Mendoza has interpreted properly. That's the only issue before me and as far as your motion to disqualify the Court on that basis, the motion is denied and we will proceed on

whether or not there was a correct interpretation by the interpreter.

4. Cimmet's testimony, in substance, was that he advised Navarro that the plea agreement was in his best interests, and Cimmet recommended Navarro accept it; that although the evidence against Navarro was strong, the case was not hopeless, but it was likely he would be convicted; *that if convicted it was Cimmet's* opinion, based on the nature of the case and quantity of drugs involved, he would get more than eight years in prison and probably the maximum of 15 years on one count, with a possibility of multiple sentences because of multiple charges; that the ultimate decision was Navarro's whether to accept the plea bargain; that Cimmet was ready to go to trial if Navarro wanted a trial.

When the court convened in the afternoon, the district judge heard the arguments of Attorney McCabe and the Government's attorney on the question of sentence. The district judge did not address Navarro personally as to whether he wished to make a statement on the question of the sentence, and Navarro made no attempt to speak on his own behalf before the sentence was imposed.

On this appeal Navarro raises three issues for reversal: (a) whether he was denied due process when the sentencing judge refused to recuse himself for prejudice, (b) whether the sentencing judge abused his discretion by refusing to allow withdrawal of the plea of guilty, and (c) whether the case must be remanded for resentencing because the sentencing judge failed to comply with Fed.R. Crim.P. 32(a)(1) by failing to inquire of Navarro whether he wished to make a statement. We discuss the issues separately.

## II

### a. *Disqualification of district judge*

■ Navarro contends that the district judge exhibited such prejudice against him in the remarks made on November 9 as to deny him his right to "[a] fair trial in a fair tribunal . . . a basic requirement of due process". *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *see Chessman v. Teets*, 239 F.2d 205, 215–16 (9th Cir. 1956), *rev'd on other grounds*, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957). A hearing by a biased judge does not comport with the fundamental concept of due process of law.

We consider appellant's contention on the basis whether his due process rights were violated, and do not, as the Government contends we should, apply the test and requirements of the recusal statutes, 28 U.S.C. §§ 144, 455. The district judge attributed his remarks to his reading of the presentence report to determine the sentence to be imposed. He received the report after Navarro's plea of guilty had been accepted, and, as the record shows, after he found there was a factual basis for the plea

from Navarro's responses during the plea hearing.

■ We reject appellant's argument that the judge's reading of the presentence report was improper because, as appellant assumed, the district judge first read the report after he had knowledge that Navarro had moved to withdraw his plea of guilty. We find no support in the record for such assumption. The judge could properly examine the report after the plea of guilty was accepted, *see* Fed.R.Crim.P. 32(c)(1), and information about the defendant he derived from the report was acquired in the proper performance of his duties as a judge in the criminal proceedings before him. Furthermore, after the terms of the plea agreement had been disclosed, the judge informed the appellant that he would defer his decision on its provision for a sentence limit of eight years until he had the opportunity to consider the presentence report. This practice conformed with the provisions of the Federal Rules on plea agreement procedure. Fed.R. Crim.P. 11(e)(2).

It may be quite another matter, of course, if the information in the presentence report unavoidably caused the district court to prejudge Navarro's motion to withdraw his plea of guilty. *Cf. United States v. Sciuto*, 531 F.2d 842 (7th Cir. 1976); *Battaglia v. United States*, 390 F.2d 256, 259 (9th Cir. 1968). We need not decide that question here. The district judge disclaimed that the information in the presentence report had influenced him with respect to the issue of credibility on the motion to withdraw the plea, and no adequate reasons have been advanced to convince us that we should not accept the district court's explicit disclaimer. *See United States v. Webster*, 468 F.2d 769, 771 (9th Cir. 1972), *cert. denied*, 410 U.S. 934, 93 S.Ct. 1385, 35 L.Ed.2d 597 (1973).

■ Understandably the district judge may have been annoyed on November 9 at the prospect of delay caused by Navarro's requests for withdrawal of the plea and for change of counsel, and the judge's remarks

might have been better left unsaid. We are not convinced, however, that under the circumstances the remarks generated such an atmosphere of personal hostility or bias toward appellant, or evidenced prejudgment of the issues on the motion for leave to withdraw the plea, as to amount to denial of Navarro's due process rights.

### b. *Denial of motion for leave to withdraw plea of guilty*

The withdrawal of a plea of guilty should be freely granted before sentence where there is a fair and just reason for doing so. *United States v. Webster, supra* at 771; *Kadwell v. United States*, 315 F.2d 667, 670–71 (9th Cir. 1963). The question of withdrawal of a plea is committed to the sound discretion of the trial court. *United States v. Cook*, 487 F.2d 963, 965 (9th Cir. 1973); *United States v. Del Valle-Rojas*, 463 F.2d 228, 229 (9th Cir. 1972); *United States v. Fragoso-Gastellum*, 456 F.2d 1287, 1287 (9th Cir.), *cert. denied*, 406 U.S. 970, 92 S.Ct. 2427, 32 L.Ed.2d 669 (1972). Fed.R.Crim.P. 32(d) imposes no limitation upon the withdrawal of a plea of guilty before sentence, but it is the burden of the defendant to present a plausible reason for withdrawal. *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); *United States v. Erlenborn*, 483 F.2d 165, 168 (9th Cir. 1973); *see United States v. Cook, supra* at 965. On appeal from the denial of a motion for leave to withdraw the plea, the standard of review is whether the trial court abused its discretion. *United States v. Youpee*, 419 F.2d 1340, 1343 (9th Cir. 1969); *Sherman v. United States*, 383 F.2d 837, 840 (9th Cir.1967); *Vasquez v. United States*, 279 F.2d 34, 37 (9th Cir. 1960).

Navarro's motion was based primarily on the claimed ineffectiveness and misleading character of the interpreter's translation that resulted, as he alleged, in his misunder-

standing of his rights. In his letter of November 3, 1978 to Attorney Cimmet announcing he wished to withdraw his plea, Navarro stated: "That woman that was in court translating. Never, tranlated [sic] things as they really was [sic], all she was doing was scaring . . . me". The letter was written more than a month after Navarro pleaded guilty and after he learned that his co-defendant had been sentenced to imprisonment. After hearing the motion the district judge focused his comments mainly on the credibility of the witnesses. In addition, he remarked that he carefully went over Navarro's constitutional rights with him "because I wanted to know whether he understood" them, that Navarro is intelligent, and that he "knew exactly what he was doing" in "these proceedings".

The basic issue presented for determination by the district court on the motion was whether Navarro understood the advice given him by the judge before the plea was accepted. *See* Fed.R.Crim.P. 11(c). Because of the language barrier between Navarro and Attorney Cimmet, and later between Navarro and the judge, it is not inherently improbable that Navarro did not understand all that transpired. Appellant argues that the difficulties of the language barrier and other "substantial considerations", such as Navarro's protestations of innocence and the lack of any prejudice to the Government,[5] considered in light of the principle that leave to withdraw a plea of guilty should be freely granted prior to sentencing, weighed heavily in favor of withdrawal of the plea, and denial of the motion constituted abuse of discretion.[6]

In determining whether Navarro presented a plausible reason to support his motion, the weight to be given the evidence and the credibility of the witnesses "is primarily a matter entrusted to the district

---

5. There is nothing in the record to show the Government would have been prejudiced from reliance on Navarro's plea of guilty.

6. Appellant also argues that the district judge abused his discretion by prejudging Navarro's

guilt on November 9. We rejected this argument heretofore on the ground that "no adequate reasons have been advanced to convince us that we should not accept the district court's explicit disclaimer". See p. 1182, *supra*.

court". *United States v. Webster, supra* at 771–72. While it appeared the district court focused mainly on the issue of credibility in the translation of the interpreter, the court also considered that Navarro had waited more than a month to raise the claim that he misunderstood his rights, and first raised that claim after learning of his co-defendant's imprisonment. From the timing and circumstances of the application to withdraw the plea, the district court could reasonably have concluded that withdrawal was intended to serve a different purpose than that avowed by appellant. *See United States v. Kay*, 537 F.2d 1077, 1078 (9th Cir. 1976).

The examination of Navarro, and the information given him, by the district judge when the plea of guilty was tendered, was thorough and clear in detail. We are not convinced that appellant has demonstrated abuse of discretion by the district judge in denying the motion, and we do not disturb the denial.

c. *Failure of sentencing judge to afford the right of allocution*

■ Rule 32(a)(1)[7] of the Federal Rules of Criminal Procedure clearly provides that the court shall address the defendant *personally and invite him to respond with a statement bearing on mitigation of punishment.* The rule requires that counsel for the defendant shall also be afforded opportunity to speak on behalf of the defendant. However, the rule is not complied with when the sentencing judge affords only to counsel the opportunity to speak. As the Supreme Court said in *Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961):

Trial judges before sentencing should, as a matter of good judicial administration, unambiguously address themselves to the defendant. Hereafter trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.

*Id.* at 305, 81 S.Ct. at 655. Because the district judge did not address Navarro personally as to whether he wished to make a statement, and Navarro made no attempt to speak on his own behalf, we reverse and remand the case for resentencing.

■ A resentencing necessitated by the district judge's failure to afford the right of allocution to defendant involves the problem whether upon remand the judge could reasonably be expected to erase earlier expressed views or findings from his mind or may overreact in an effort to be impartial. It is well recognized that "[i]t is difficult for a judge, having once made up his mind, to resentence a defendant . . .". *Mawson v. United States*, 463 F.2d 29, 31 (1st Cir. 1972). *See United States v. Rosner*, 485 F.2d 1213, 1231 (2d Cir. 1973), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974). On remand, in exercising his right to allocution defendant has the right to present fully all available accurate information bearing on mitigation of punishment, and the district court has a duty to listen and give careful and serious consideration to such information. *See United States v. Stein*, 544 F.2d 96 (2d Cir. 1976). If the information submitted involves new factual matter, the fact that the district judge has previously formed and expressed a judgment of defendant may make it difficult for him to consider the new matter unhampered by his prior conclusions. A different district judge would not encounter such difficulty.

■ The record here shows repeatedly expressed views,[8] some apparently firmly

7. Fed.R.Crim.P. 32(a)(1) provides in pertinent part:

    \*    \*    \*    \*    \*    \*

  Before imposing sentence, the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf

and to present any information in mitigation of punishment.

    \*    \*    \*    \*    \*    \*

8. On November 9, 1978 the district judge viewed the appellant as a "well educated, sophisticated, knowledgable, intelligent dope dealer . . .". On December 22, 1978 he referred to appellant as a "sophisticated drug pusher"; as "doing a very highly sophisticated

expressed, of defendant by the district judge, and we are of the opinion that "both for the judge's sake, and the appearance of justice", *see Mawson v. United States, supra* at 31, an assignment to a different judge for resentencing is "salutary and in the public interest", *see United States v. Bryan*, 393 F.2d 90, 91 (2d Cir. 1968). *Cf. United States v. Murphy*, 530 F.2d 1 (4th Cir. 1976). In a resentencing here on the plea of guilty, the gain in preserving the appearance of fairness outweighs the countervailing considerations of duplicated effort. Where there is no proof of personal bias requiring recusation "our remand does not imply any personal criticism of the . . . sentencing judge". *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977).

REVERSED AND REMANDED FOR RESENTENCING IN CONFORMITY WITH THIS OPINION.

KILKENNY, Circuit Judge, specially concurring:

I fully concur in the opinion with the exception of that portion which would prevent the judge who originally sentenced appellant from continuing with the sentencing process. In my opinion, under the facts of this case, neither justice nor the appearance of doing justice would be compromised by remanding to the same judge.

judge-shopping procedure"; that "[h]e may fool a lot of people, but he doesn't fool me, not for one moment"; that "to allow this defendant

to change his plea at this time would be a travesty of justice".