# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1192
_____

United States of America

*Plaintiff - Appellee*

v.

Juanita White Shield

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: October 20, 2023
Filed: December 4, 2023

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Juanita A. White Shield of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 113(a)(3), 1152, and 1153. The district court sentenced her to 57 months in prison and ordered $11,893.01 in restitution. She appeals the conviction and order of restitution. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part and remands in part.

On July 17, 2021, White Shield discovered her husband in his truck with another woman. She punched the woman through the truck's open window. The husband and woman drove off. White Shield and her friend followed. Catching up to the husband, White Shield told the woman to "get the fuck out of the truck" and punched her again through the window. The woman and husband got out of the truck. White Shield grabbed a metal bar from the back of the truck and hit the woman multiple times in the face and head with the bar. She then left the woman bleeding profusely on the side of the road.

Law enforcement located and questioned White Shield shortly after the assault. She initially denied assaulting the woman with any weapon. Asked if she was willing to take a lie detector test, she responded, "I hit her with a bar." After showing her the weapon, White Shield said, "That was the bar that I used."

At trial, White Shield's friend testified. During her testimony, she mentioned three times that White Shield "was on probation." White Shield moved for a mistrial. Denying the motion, the court said:

> All right. Well, with respect to a request for a mistrial, the Court will deny that. It's certainly noted for the record, but I'm not going to grant a mistrial based on the fact that this witness on three occasions mentioned that Ms. White Shield was, quote, on probation, end of quote. That statement in and of itself does not infer guilt of using a weapon, a pole, to strike the victim in this case that's the subject of this criminal charge.
>
> I'm not faulting the government for not properly preparing this witness. Sometimes you can't always control what people say on the stand, and—but the mere fact that somebody is on probation is not an inference of guilt and doesn't rise to the level of prejudice that would warrant a mistrial.
>
> I do intend to give the jury a cautionary instruction. I'll essentially tell them—I'll strike from the record any mention of probation and tell them to ignore that and to not infer anything from that statement or

words to that effect. Mr. Rose, if you want me to give the jury a broader, a different cautionary instruction, I would ask that you put something together and get it to me by the end of the workday.

But it's not the first criminal trial that I've had where there's been witnesses that have talked about the defendant being on probation, being on supervised release, being on supervision, having other convictions, and none of those have rose to the level of necessity for a mistrial as well.

The jury returned, and the court instructed them:

Welcome back, members of the jury. I apologize for the short delay, but we needed to take care of some matters outside of your presence.

With respect to the testimony that you've heard from Ms. Karcen Smith, there was reference here just recently to a conversation that Ms. Smith had with the defendant, Ms. Juanita White Shield, where Ms. Smith said that Ms. White Shield was on probation or words to that effect. I think she said that three times.

I'm striking that reference to those words from the record in this case. You are instructed that you are to ignore the reference to probation. Whether Ms. White Shield was or was not on probation for anything is not relevant to this case. It's not relevant to the charge that we're dealing with in this trial, and you are instructed to ignore that, and I'm striking those words from the record.

White Shield appeals.

## I.

White Shield argues the district court erred in denying her motion for a mistrial. This court reviews for abuse of discretion. ***United States v. Thompson***, 533 F.3d 964, 971 (8th Cir. 2008). The district court has "broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect of any possible prejudice." ***United States v. Urqhart***, 469 F.3d 745, 749 (8th Cir.

-3-

2006) (internal quotation marks omitted). "The prejudicial effect of any improper testimony is determined by examining the context of the error and the strength of the evidence of the defendant's guilt." *See United States v. Hollins*, 432 F.3d 809, 812 (8th Cir. 2005).

There was ample evidence of guilt here. White Shield's friend testified that she hit the victim three to four times with a metal pole. The deputy who responded to the scene testified that when he discovered the victim, "she was covered in blood from the top of her head, all the way down to the tip of her toes" and said "she was hit in the head with a crowbar." The victim testified that White Shield assaulted her with what she believed was a crowbar. The government introduced pictures of the victim from the hospital with a large open wound. Most significantly, the government introduced a video of White Shield's interview after the assault stating that, "I hit her with the bar." The government also introduced the bar—that White Shield identified to officers that night. In light of the overwhelming evidence of guilt, the court did not err in determining that the statements had minimal, if any, prejudicial effect. *See United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012) (holding that a district court did not abuse its discretion in denying a motion for a mistrial where there were three references to the defendant's criminal history because the references were "fleeting" and remedied by the district court, and there was substantial evidence of guilt). Any potential prejudice was cured by the district court's instruction. *See United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008) ("Admission of a prejudicial statement is normally cured by striking the testimony and instructing the jury to disregard the remark.").

II.

At sentencing, the court ordered $11,893.01 in restitution and waived interest on this amount. The written judgment awarded restitution in the amount of $11,983.01 and did not reference the interest waiver. "[W]hen an oral sentence and the written judgment conflict, the oral sentence controls." *United States v. Bertucci*, 794 F.3d 925, 930 (8th Cir. 2015). This court remands to the district court to amend

the written judgment to reflect its pronouncement at sentencing. *See **United States v. Mitchell***, 308 F. App'x 162, 165 (9th Cir. 2009) (unpublished) ("We remand to permit the district court to amend the written judgment so that it conforms to the terms of the oral pronouncement during sentencing.").

\* \* \* \* \* \* \*

The judgment is affirmed, but the case remanded for further proceedings consistent with this opinion.

_____